AO 91 (Rev. 11/11)  Criminal Complaint

FILED
SEP 04 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Kyle James Murphy<br><br>*Defendant(s)* | )<br>)<br>)  Case No. **4-19-71437**<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **May 21, 2019 to Sept. 3, 2019** in the county of **Contra Costa** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. sec. 841(a)(1) | Mfr, distribution, possession w/ intent to distribute controlled substances<br>MAX PENALTIES: 20 years prison; 3 years to life supervised release; $1,000,000 fine; $100 special assessment; forfeiture; restitution |
| 21 U.S.C. sec. 846, 843(a)(5) | Possession, attempt to possess punches and dies designed to imprint a mark so as to make a counterfeit drug<br>MAX PENALTIES: 4 years prison; 3 years supervised release; $250,000 fine; $100 special assessment; forfeiture; restitution |

This criminal complaint is based on these facts:

See attached affidavit of DEA TFO Jarred Pereira

☑ Continued on the attached sheet.

Approved as to form ___/s/___ for AUSA Frank Riebli

_____
*Complainant's signature*

DEA TFO Jarred Pereira
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 09/04/2019

_____
*Judge's signature*

City and state: Oakland, CA

Hon. Kandis A. Westmore, U.S. Magistrate
*Printed name and title*

## AFFIDAVIT OF TASK FORCE OFFICER JARRED PEREIRA
## IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jarred Pereira, a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state the following:

### I. INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I make this affidavit in support of a criminal complaint against Kyle James MURPHY. For the reasons stated below, I submit that there is probable cause to believe that MURPHY has distributed and possessed with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), and possessed or attempted to possess punches and dies with the intent to produce counterfeit drugs, in violation of 21 U.S.C. § 843(a)(5).

3. The statements contained in this affidavit are based on my own investigation, my training and experience as a law enforcement agent, information provided to me by or through other law enforcement agents, investigators and individuals with knowledge of this matter, and through my review of documents related to this investigation. This affidavit summarizes such information in order to show that there is probable cause to believe that MURPHY committed the above offenses. This affidavit does not purport to set forth all of the evidence gathered to date in this investigation, or to name all of the persons who participated in these crimes.

### II. APPLICABLE LAWS

4. The Controlled Substances Act, 21 U.S.C. § 841(a)(1), makes it unlawful to manufacture, distribute, and possess with the intent to distribute controlled substances, including fentanyl, methamphetamine, and heroin.

5. The CSA, 21 U.S.C. § 843(a)(5), also makes it unlawful knowingly to make, distribute, or possess any punch, die, plate, stone, or other thing designed to print, imprint, or

reproduce the trademark, trade name, or other identifying mark, imprint, or device of another or any likeness of any of the foregoing upon any drug or container or labeling thereof so as to render such drug a counterfeit substance. It is also an offense to attempt to possess such punches and dies. 21 U.S.C. § 846.

### III. AGENT BACKGROUND

6. I am a sworn Peace Officer for the State of California, and have been so employed since April of 2012. I received formal training at the Police Officers Standards and Training (POST) approved Law Enforcement Training Center (LETC) Basic Police Academy in Pittsburg, CA. Currently, I am employed by the San Ramon Police Department as a Detective, and am a deputized Task Force Officer (TFO) with the United States Department of Justice, Drug Enforcement Administration (DEA). As a TFO, I am currently assigned to the DEA's Oakland Resident Office as a member of the Tactical Diversion Squad, and have been so since November of 2015.

7. The formal training I have received at the LETC Basic Police Academy, and through various additional POST approved training courses, consisted of comprehensive, formalized instruction in, among other topics: Basic drug investigations, drug identification and detection, interdiction, familiarization with state drug laws, financial investigations, identification and seizure of drug related assets, organized crime investigations, physical and electronic surveillance, and evidence handling.

8. Additionally, I have received formal training as a TFO with the DEA at the Drug Enforcement Administration Training Academy in Quantico, Virginia. This training consisted of comprehensive, formalized instruction in, among other topics: Asset forfeiture, money laundering investigations, wiretap investigations, and the fundamentals of an Organized Crime Drug Enforcement Task Force (OCDETF) investigation. Moreover, in 2017, I attended and completed the DEA's Tactical Diversion Squad (TDS) School. TDS School consisted of comprehensive, formalized instruction in, among other topics: The diversion of controlled

substances, poly-drug organization investigations, healthcare professional investigations, the illicit use of various tablet-press/ pill-press machines, and the equipment/ materials needed to manufacture counterfeit pills.

9. During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including those offenses related to this current investigation. As a Peace Officer for the State of California, I have participated in no less than 50 investigations involving the possession of, the sale of, and/or the transportation of cocaine, heroin, ecstasy, methamphetamine, marijuana, and/or prescription drugs. As a TFO for the DEA, I have participated in no less than 30 investigations of illicit drug trafficking organizations, ranging from street level dealers to major distributors. I have also participated in no less than 5 investigations focused specifically on physicians/ health care professionals who are involved in the illegal prescribing, filling, and distributing of prescription controlled substances. Furthermore, I have participated in no less than 5 investigations involving individuals possessing firearms and/or selling firearms without a license. The subjects of these investigations have been involved in the distribution and possession with intent to distribute controlled substances, conspiracies to do the same, money laundering, weapons manufacturing/ possession, and conspiracies to launder drug proceeds. These investigations have made use of numerous investigative techniques, including: confidential informants; undercover agents; the analysis of pen registers, trap and trace, and toll records; physical surveillance; electronic surveillance, including tracking the physical locations of vehicles and cellular telephones, the use of pole-mounted cameras and wiretaps; and, the execution of search warrants. These investigations have resulted in numerous state and federal prosecutions, as well as the seizure of illegal drugs and drug proceeds.

10. I have worked with approximately 15 informants/cooperators and approximately 5 undercover agents and have monitored meetings and consensual telephone conversations with drug dealers involving informants and undercover agents. I have participated in hundreds of hours of both physical and electronic surveillance of drug traffickers. While conducting

surveillance, I have observed drug transactions, counter-surveillance techniques, and the methods that drug traffickers use to conduct clandestine meetings.

11. I have participated in no less than 7 OCDETF investigations. OCDETF is a task force comprised of multiple law enforcement agencies which jointly investigate drug trafficking organizations.

12. I have been involved in the execution of no fewer than 100 state and federal drug-related search warrants, parole searches, and probation searches. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles that drug traffickers and trafficking organizations use to import, conceal, manufacture, and distribute controlled substances. I am familiar with the appearance of heroin, cocaine, methamphetamine, marijuana, ecstasy, fentanyl, alprazolam, and other controlled substances. I also am familiar with some of the code words, slang and other terminology that drug traffickers use to communicate with each other concerning drugs, drug dealing, handling of drug proceeds and guns.

13. I have interviewed no fewer than 100 drug dealers, users, and confidential informants and have discussed with them the lifestyle, appearances, and habits of drug dealers and users, the use and meaning of coded language and the concealment of assets. I have become familiar with the manner in which drug traffickers smuggle, transport, store, and distribute drugs, as well as how they collect and launder drug proceeds. I also am familiar with the ways drug traffickers use telephones (including cell phones), pagers, false or fictitious identities, friends' and relatives' identities and other means to facilitate their illegal activities and thwart law enforcement investigations.

14. Lastly, I have participated in investigations into, and the seizure of, no less than 7 tablet-press/ pill-press machines, and their various parts. Each machine was used to manufacture controlled substances to include: counterfeit amphetamine/dextroamphetamine (Adderall) pills, counterfeit alprazolam (Xanax) pills, and Ecstasy (MDMA) pills. These machines were powered by either a manually operated hand-crank, or an electronic motor. In addition, these machines

utilized a "punch" and "die" combination system to compress the loose, powdered ingredients into pills. Based on my training and experience, I know that a "die" is used to hold/mold the loose, powdered ingredients into a specific shape, and a "punch" is then used to stamp the desired symbol/ imprint into the pill, ultimately forming the finished product.

### IV. STATEMENT OF PROBABLE CAUSE

#### A. Background of Investigation

15. According to Customs and Border Protection ("CBP") Officer Ryan Santino, MURPHY received 17 international parcels between December, 2017, and May, 2019. Officer Santino identified the majority of MURPHY's international parcels as importations from China, which included manifested descriptions of the contents by the shippers. Per Officer Santino, the manifested descriptions fit those of items that, in his experience, are commonly associated with items used to manufacture illicit narcotics in pill/tablet form.

16. CBP seized two of those parcels. On or about May 21, 2019, CBP officers interdicted a parcel sent from an address in China and addressed to "Kyle Murphy" which contained parts commonly associated with a pill press machine. These parts included: two circular shaped punches (no logos or imprints), and two dies that fit those punches. On or about May 24, 2019, CBP seized another parcel sent from an address in Hong Kong and addressed to "Kyle Murphy". That parcel contained four punches and two dies. One punch was rectangular and had the trademark imprint "XANAX" with vertical dividing lines; another punch had the trademark imprint "2" with vertical dividing lines. One of the two dies fit the shape of those rectangular punches. Based on my training and experience, I believe these punches and their corresponding die were intended to be used to manufacture counterfeit Xanax[1] pills with the use of a tablet-press machine. Moreover, I know that "Xanax" is a trademarked good, and I know

---

[1] I know alprazolam (Xanax) is a Scheduled IV controlled substance and it is classified as an anti-depressant, benzodiazepine. Further, I know that alprazolam (Xanax) must be prescribed by a licensed physician for a legitimate medical purpose.

5

from opened source queries that the trademark is owned by "Pharmacia & Upjohn Company LLC", a division of "Pfizer Inc."

17. The two additional punches in the second parcel were square in shape, with one punch bearing the imprint "GUCCI" with the "Gucci" designer logo; and the other punch bearing a vertical dividing line. In addition, the parcel contained one die that fit the shape of those square shaped punches. Based on my training and experience, I believe these punches and their corresponding die were intended to be used to manufacture MDMA[2] pills with the use of a tablet-press machine.

18. On May 11, 2019, Officer Santino received information from CBP Officer Tye Mulder at the CBP Cargo Processing Unit in Blaine, Washington regarding a parcel invoice for MURPHY. The parcel was from the company "The Press Club Nutrition Ltd." at address (in part) "3329 Thor Court, Coquitlam, British Columbia, Canada", to "Kyle Murphy" with the listed phone number as "510-221-7467", the listed e-mail as "Kylemurphy609@yahoo.com", and "200 South Court, Alamo, CA 94507" as the destination address. Agents identified this address as one of MURPHY's listed Department of Motor Vehicle ("DMV") addresses.

19. The parcel was manifested as "Tablet Press Club Formula 5102 1kg". According to "The Press Club Nutrition" company's website, "Formula 5102" is "[a] premium, top of the line pre-mixed excipient formula containing Microcrystalline Cellulose 102. It is mixed with a high performance tablet lubricant which is not sensitive to over-mixing when active ingredients are added. This powder formula has excellent flow properties and will not stick to punches. Pressed tablets are shiny and very hard, yet disintegrate very rapidly." Based on my training and experience, I know that microcrystalline cellulose is a common binding agent used in conjunction with controlled substances for illicit pill manufacturing. The microcrystalline

---

[2] I know that 3, 4-methylenedioxymethamphetamine (MDMA) is a Schedule I controlled substance and it is classified as a stimulant. Further, I know that MDMA, or "Ecstasy," is used recreationally as a party drug, and the pills are commonly imprinted with designer clothing logos (Gucci, Louis Viton, etc.), superhero logos (Batman, Superman, etc.) and/or vehicle logos (Tesla, Mitsubishi, etc.).

cellulose acts as a binder or stabilizer that holds the powdered ingredients together once formed into a pill. Moreover, I know that the amount ordered by MURPHY, one kilogram, is enough to produce thousands of pills.

20. On September 3, 2019, agents executed a federal search warrant at three locations associated with MURPHY. At MURPHY's apparent residence, 3 Rebecca Court, Walnut Creek, CA 94597, agents discovered the following items of evidentiary value within MURPHY's bedroom:

    a. A "freezer size" zip-lock bag labeled "1kg" of "Microcrystalline Cellulose" from "The Press Club Nutrition LTD", which contained approximately one kilogram of a white powdery substance, that tested presumptive positive for the presence of fentanyl;

    b. Three individually-packaged zip-lock baggies, which each contained approximately one gram of suspected fentanyl;

    c. An individually-packaged zip-lock baggie, which contained approximately three grams of suspected methamphetamine;

    d. An individually-packaged zip-lock baggie, which contained approximately one gram of suspected black-tar heroin;

    e. An individually-packaged pull-string baggie, which contained four (4) suspected MDMA capsule pills, that tested presumptive positive for the presence of amphetamine and methamphetamine;

    f. A large zip-lock bag containing dozens of unused capsule pill shells;

    g. A blender containing a white powdery substance strewn throughout; and,

    h. A digital scale.

21. Based on my training and experience, I believe that the quantity of suspected fentanyl located inside MURPHY's bedroom (approximately one kilogram), along with the number individually-packaged substances; as well as the blender and digital scale, all indicate that MURPHY was possessing these items with intent to distribute controlled substances.

Moreover, post Miranda advisement, MURPHY admitted to agents that there was fentanyl inside his bedroom, and he admitted to distributing fentanyl to at least three customers.

### V.   CONCLUSION

22.   Based on the foregoing information, along with my training and experience, I respectfully submit that there is probable cause to believe that MURPHY distributed and possessed with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), and that he possessed or attempted to possess punches and dies designed to make counterfeit drugs, in violation of 21 U.S.C. §§ 843(a)(5) and 846.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

JARRED PEREIRA
DEA Task Force Officer

Subscribed to and sworn to before me on this __4th__ day of September, 2019 in Oakland, California.

HON. KANDIS A. WESTMORE
United States Magistrate Judge